# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| RHONDA KAY CHANDLER,<br><br>                    Plaintiff,<br><br>          vs.<br><br>COMMISSIONER OF SOCIAL<br><br>SECURITY,<br><br>                    Defendant. | No. 1:16-cv-03096-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 14, 26 |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 14, 26. The parties consented to proceed before a magistrate judge. ECF No. 6. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No. 26).

**JURISDICTION**

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159

(quotation and citation omitted). Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted). In determining whether the standard has been satisfied, a

reviewing court must consider the entire record as a whole rather than searching

for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its

judgment for that of the Commissioner. If the evidence in the record "is

susceptible to more than one rational interpretation, [the court] must uphold the

ALJ's findings if they are supported by inferences reasonably drawn from the

record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. §§ 404.1520(c); 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to

other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on July 13, 2010, alleging a disability onset date of December 1, 2009. Tr. 213-23. The applications were denied initially, Tr. 100-01, and on reconsideration, Tr. 102-03. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on September 7, 2012. Tr. 35-99. On December 11, 2012, the ALJ denied Plaintiff's claim. Tr. 14-34. On June 19, 2014, the Appeals Council denied review, Tr. 1-6, making the Commissioner's decision final for purposes of judicial review. *See* 42 U.S.C. 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210. On May 22, 2015, the District Court remanded the ALJ's decision concluding "there were multiple errors in the prior decision, including failure to address Listing 12.05C, failure to include borderline intellectual

functioning as a severe impairment, problems in some of the analysis of the claimant's statements, and problems in some of the opinion analysis." Tr. 557 (citing Tr. 698-722). Plaintiff appeared at a second hearing before the ALJ on March 2, 2016. Tr. 647-62. The ALJ denied Plaintiff's claim for a second time on March 22, 2016. Tr. 554-78.

First, the ALJ found that Plaintiff met the insured status requirement of the Social Security Act through December 31, 2013. Tr. 560. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since December 1, 2009. Tr. 560. At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the spine, affective disorder, anxiety disorder, substance abuse disorder, and intellectual disability. Tr. 560. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 561. The ALJ then concluded that Plaintiff has the RFC to perform light work, with the following non-exertional limitations:

> The claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently, can stand and/or walk, and sit for about six hours in an eight-hour day with usual breaks, and can push, and/or pull without limitation other than within the lift/carry limitations. She has no postural or environmental limitations. The claimant can perform simple, routine tasks and follow short, simple instructions doing work that needs little or no judgment. She can perform simple duties that can be learned on the job in a short period of less than 30 days. The claimant can respond appropriately to supervisors and coworkers, and can deal with occasional changes in the

workplace environment. She can have occasional exposure to or interaction with the general public.

Tr. 564. At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 570. The ALJ found at step five that there are other jobs that exists in significant numbers in the national economy that Plaintiff could perform within her assessed RFC, such as production assembler, electronics worker, and agricultural produce sorter. Tr. 571. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the adjudicative period. Tr. 572.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 14. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly found that Plaintiff's impairments do not meet a listing impairment at Step Three;

2. Whether the ALJ properly discredited Plaintiff's symptom claims; and

3. Whether the ALJ properly weighed the medical opinion evidence.

ECF No. 14 at 1.

# DISCUSSION

## A. Step Three

Plaintiff argues the ALJ erred by improperly finding that Plaintiff did not meet the requirements of Listing 12.05C—Intellectual Disability.  ECF No. 14 at 4-9.

At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment.  20 C.F.R. § 404.1520(a)(4)(iii).  The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience."  20 C.F.R. § 404.1525.  To meet a listed impairment, a claimant must establish that she meets each characteristic of a listed impairment relevant to her claim.  20 C.F.R. § 404.1525(d).  The claimant bears the burden of establishing she meets a listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).  If a claimant meets the listed criteria for disability, she will be found to be disabled.  20 C.F.R. §§ 404.1520(a)(4)(iii).

In the introductory paragraph to Listing 12.05, intellectual disability is defined as "significantly subaverage general intellectual function with deficits in adaptive function initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."  20

C.F.R. Pt. 404. Subpt. P, App. 1.  To satisfy Listing 12.05C, a claimant must

demonstrate (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2)

deficits in adaptive functioning which manifested prior to age 22; and (3) a

physical or mental impairment imposing an additional and significant work-related

limitation of function.  20 C.F.R. Pt. 404. Subpt. P, App. 1 § 12.05(C).  Deficits in

adaptive functioning are shown by "significant limitations in at least two of the

following skill areas: communication, self-care, home living, social/interpersonal

skills, use of community resources, self-direction, functional academic skills,

work, leisure, health, and safety[.]"  Diagnostic and Statistical Manual of Mental

Disorders (5th ed.) (DSM-V).[1]

———————————————

[1] Plaintiff complains that the ALJ conflates Listing 12.05C and 12.05D by

employing the definition of deficits in adaptive functioning detailed here.  ECF No.

14 at 9.  The Court finds this argument to be without merit.  First, the requirements

of 12.05D are distinct from those listed above.  *See* 20 C.F.R. Pt. 404. Subpt. P,

App. 1 § 12.05(D) ("A Valid verbal, performance, or full-scale IQ of 60 through

70, resulting in at least two of the following: 1. Marked restriction of activities of

daily living; or 2. Marked difficulties in maintaining social functioning; or 3.

Marked difficulties in maintain concentration, persistence, or pace; or 4. Repeated

episodes of decompensation, each of extend duration.").  Conversely, the definition

First, the ALJ found that Plaintiff did not demonstrate deficits in adaptive functioning that manifested prior to age 22 because her history is inconsistent with such a finding. Tr. 563. Specifically, the ALJ cited that Plaintiff was never in special education, she denied ever being diagnosed with a learning disability, and Plaintiff got good grades in school until she dropped out in the eighth grade due to pregnancy. Tr. 530. The ALJ also considered that Plaintiff is able to care for herself, she raised three children on her own, she worked as a waitress and as a CNA for years to support herself and her children, she drives herself to work and appointments, she can cook, clean, attend appointments, and communicate without difficulty. Tr. 563.

In contrast, Plaintiff cites evidence that Plaintiff has difficulty with math, reading comprehension, and concentration. ECF No. 14 (citing Tr. 40, 65, 82, 249, 518, 529, 535, 657). Plaintiff also cites evidence that she only finished school through the seventh grade, Tr. 651, and failed to obtain her GED despite several attempts, Tr. 530. ECF No. 14 at 6. Plaintiff argues that substantial evidence cited by the ALJ only requires significant limitations in much broader categories. Furthermore, even if the ALJ erred in citing DSM-V to define deficits in adaptive functioning, any error was harmless as the ALJ properly discounted Plaintiff's qualifying IQ scores.

supports a finding that Plaintiff had deficits in adaptive functioning which manifested before age 22.[2]  ECF No. 14 at 6.  However, the question for this court is whether substantial evidence supports the ALJ's finding.  *Hill*, 698 F.3d at 1158. The Court finds that it does.  The evidence Plaintiff offers showing low academic achievement does not undermine the ALJ's conclusion.

Next, the ALJ considered Plaintiff's IQ testing, and found that she does not have a valid verbal, performance, or cumulative IQ score of 70 or below.  Tr. 563-64 ("Although the record includes low composite scores from psychological testing, there are reasons to doubt the veracity of these scores.").  Plaintiff has two scores that are 70 or below, however, the ALJ discounted both as invalid.  First, Dr. Dougherty found that Plaintiff had a full-scale IQ score of 70 based on Wide

_____

[2] Plaintiff argues that the ALJ was required to find that Plaintiff had deficits in adaptive functioning before age 22 because of the prior district court opinion, which cited law that if a Plaintiff is found to have valid IQ scores under Listing 12.05C, they are presumed to have had a similar IQ before age 22.  ECF No. 14 at 7.  As is evident from the prior court's opinion, such a finding is predicated on the ALJ finding that Plaintiff has *valid* qualifying IQ scores.  *See* Tr. 718-20. However, the ALJ properly discounted Plaintiff's IQ scores, making any assumption about their applicability before age 22 irrelevant.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

Range Achievement Test 4. Tr. 533. The ALJ discounted this opinion because Dr.

Dougherty indicated that though apparently valid, the results "may indicate a lower

level of function than normal given [Plaintiff's] cold and anxiety." Tr. 563 (citing

Tr. 532). Dr. Dougherty also noted that while Plaintiff was not clearly malingering

during testing, there were significant discrepancies in her self-reports; he went on

to question "how honest or accurate in her reporting she might have been."

Tr. 536. Dr. Dougherty noted certain discrepancies between her self-reports at her

previous evaluation and the present evaluation, such as "[s]he reported that (sic)

the time of the first evaluation that her mother emotionally neglected her. She said

that she saw her mother abused physically frequently, contrary to her present

report." Tr. 531. Next, Dr. Dougherty noted "[h]er reports regarding drinking and

treatment were mildly different from those she gave me at this time, she reported,

for example, that she lost her husband because of her drinking. She also reported

seeing her mother abused a lot by boyfriends, contrary to her present report."

Tr. 531. In another example, Dr. Dougherty noted "in my previous evaluation that

her records indicated that she had a satisfying relationship with a male for 26 years,

contrary to her more recent reports." *Id.* Finally, "[h]er reports of her employment

were also somewhat different from those during this evaluation." *Id.* Such

discrepancies as well and Dr. Dougherty's opinion that Plaintiff's testing

demonstrated a lower level of functioning that she actually had provide substantial evidence for the ALJ to discount the assessed IQ score.

Dr. Toews assessed Plaintiff as having a verbal comprehension score of 70 on October 11, 2015. Tr. 865. The ALJ rejected the validity of this test. Tr. 564. The ALJ discounted the assessed score because Dr. Toews noted that Plaintiff's verbal comprehension score was inconsistent with his observations at the examination. Tr. 564 (citing Tr. 859 ("Verbal Comprehension and Perceptual Reasoning scores are inconsistent with her conversational vocabulary, alertness to the parking lot sign,[3] and nonverbal abilities are more like … in the low average range.")). Furthermore, despite Plaintiff's assessed IQ scores, Dr. Toews indicated that Plaintiff has no significant cognitive barrier to employment. Tr. 564 (citing Tr. 860 ("There is no significant cognitive barrier to employability. … She had no difficulty comprehending test instructions or test items.")). Dr. Toews also noted inconsistencies in Plaintiff's self-reported history. Tr. 860 ("[Plaintiff] presents with a variable and inconsistent history."). He also noted inconsistencies in her

---

[3] Dr. Towes explained this comment: "Her DDS appointment letter indicated there was 4 hours free parking across the street. She informed the examiners there is a sign behind tree branches indicating only 2 hours of free parking. She stated she would need a break to move her vehicle."

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 14

reports to Dr. Dougherty and himself in how Plaintiff's mother died, and in her personal relationships include whether or not she had been married. Tr. 565; Tr. 856. The ALJ's finding that the IQ scores assessed by Dr. Toews are not valid is supported by substantial evidence.

Plaintiff asserts that the ALJ relied on the opinion of Dr. Toews in finding Plaintiff did not meet Listing 12.05C "without ever evaluating or assigning weight to that opinion." ECF No. 14 at 11 (citing Tr. 568-70). This assertion appears to lack a basis in fact. An incantation that a physician's report is rejected is not required; the court may draw reasonable inferences from the ALJ's discussion of a particular physician's report. *See Magallenes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989). The ALJ substantively evaluated Dr. Toews' opinion before discounting Plaintiff's IQ scores. Tr. 564. The ALJ found that Plaintiff's scores were inconsistent with themselves, and inconsistent with Dr. Towes' observations of Plaintiff. *Id.* Plaintiff concedes "there is considerable evidence that the psychological evaluations performed by Dr. Toews are highly unreliable." ECF No. 14 at 11 (citing Tr. 180-212). While the ALJ did not specifically assign weight to Dr. Toews opinion, it is clear from the ALJ's discussion that the ALJ discounted the IQ scores present in the opinion. Any error in not specifically stating the weight afforded to Dr. Toews' opinion is harmless error as the ALJ's substantive outcome would have been identical. *Molina,* 674 F.3d at 1115 (An

error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination.") (internal quotations and citation omitted). A district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki*, 556 U.S. at 409-10.[4]

## B. Medical Opinion Evidence

Plaintiff faults the ALJ for discounting the medical opinions of Rachel Worley NP-C, and Wing Chau, M.D. ECF No. 14 at 12-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

_____

[4] Plaintiff also challenged that the ALJ did not specifically rule on Plaintiff's counsel's request that "Dr. Toews' report be stricken from the record." ECF No. 14 at 11. The Court does not find Plaintiff's underlying reasoning as to why Dr. Toews' opinion should be excluded to be specific to this particular opinion or generally persuasive. The Court notes that despite making such a request, Plaintiff invokes Dr. Toews' opinion for the assessed IQ scores. ECF No. 14 at 10. For these reasons, the Court is not persuaded that Plaintiff was prejudiced by the ALJ's supposed failure to rule on Plaintiff's counsel's request that Dr. Toews' report be stricken.

(examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

*1. Ms. Worley*

Rachel Worley, NP-C, a treating provider, completed a medical report on August 23, 2012. Tr. 449-50. She stated that Plaintiff's diagnoses were glaucoma, chronic low back pain, chronic gluteal pain, SI joint sprain, and trochanteric bursitis. Tr. 449. Ms. Worley opined that Plaintiff would need to lie down 1-2 times a day due to pain. *Id.* She further opined that Plaintiff would miss one day of work a month due to medical impairments, noting that "[t]his is more likely to occur with work including high activity and lifting." Tr. 450. The ALJ assigned the opinion "little weight." Tr. 569. Ms. Worley is an "other source" under the regulations. 20 C.F.R. § 416.913(d). Thus, the ALJ was required to cite germane reasons for rejecting the opinion. *See Dodrill*, 12 F.3d at 919.

First, the ALJ afforded Ms. Worley's opinion little weight because she "did not provide any clinical findings or objective evidence supporting her limitations." Tr. 569. A medical opinion may be rejected by the ALJ if it is conclusory, contains inconsistencies, or is inadequately supported. *Bray*, 554 F.3d at 1228; *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). The opinion does not include any examination findings. *See* Tr. 449-50. The only evidence she cites is an MRI and an x-ray of Plaintiff's hip, and an MRI of Plaintiff's lumbar spine all within normal limits. Tr. 449. Otherwise, there is no support for her opinion as her written findings are entirely devoid of observations and evidence. *See* Tr. 449-

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

50.  Such a lack of support is a germane reason for the ALJ to afford Ms. Worley's opinion "little weight."

Next, the ALJ discounted Ms. Worley's opinion because she relied on the Plaintiff's subjective symptom complaints.  Tr. 569.  A physician's opinion may be rejected if it is based on a claimant's subjective complaints which were properly discounted.  *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989).  The ALJ noted that Ms. Worley diagnosed Plaintiff with chronic low back pain and gluteal pain.  Tr. 569 (citing Tr. 449).  However, as discussed *supra*, Ms. Worley did not cite any objective evidence to support such diagnoses.  *See* Tr. 449-50.  Therefore, the ALJ reasonably concluded that Ms. Worley relied on Plaintiff's symptom complaints in forming those diagnoses.  Tr. 569.  However, as will be discussed *infra,* the ALJ properly discounted Plaintiff's symptom testimony.  Therefore, to the extent that Ms. Worley relied on Plaintiff's symptom testimony in forming her medical opinion, such reliance is a germane reason to discount her opinion.

Next, the ALJ discounted Ms. Worley's opinion because "under Agency guidelines, pain is not a diagnosis but a symptom."  Tr. 569.  Two of Ms. Worley's five diagnoses are for chronic right gluteal pain and chronic low back pain.  Tr. 449.  However, per Social Security regulations, pain is a symptom because it is a

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

Plaintiff's "own description of [their] physical or mental impairment." 20 CFR §416.928(a). This reason is not itself a germane reason to discount Ms. Worley's entire medical opinion, however, it does help contextualize her opinion regarding Plaintiff's pain.

Finally, the ALJ found that Ms. Worley's opinion is "inconsistent with the effectiveness of conservative treatment for the [Plaintiff's] complaints of pain," and "the inconsistent reports of physical problems and minimal physical examination findings." Tr. 569. An ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). As will be discussed in detail *infra,* the ALJ's finding that Plaintiff's pain complaints are incompatible with the objective evidence in the record, including evidence of the effectiveness of conservative treatment, is supported by substantial evidence. This is a germane reason for the ALJ to discount Ms. Worley's opinion.

### 2. *Dr. Chau*

Dr. Chau examined Plaintiff on October 13, 2015. Tr. 878-86. He provided a narrative report of his examination and findings as well as check-box medical source statement dated the same day. *Id.* In his narrative statement, Dr. Chau opined that Plaintiff is capable of full-time work at the medium exertion level. Tr. 880. Dr. Chau further opined that Plaintiff's "only restriction would be avoid

excessive twisting activities at the waist." Tr. 880. Despite this note, Dr. Chau's medical source statement opined that Plaintiff can never climb ladders or scaffolds, crouch, or crawl and occasionally climb stairs and ramps, stoop and kneel. Tr. 884. The ALJ gave "significant weight to Dr. Chau's examination and treatment record, and the narrative statement that Plaintiff is capable of full-time work at the medium exertional level." *Id.* The ALJ declined to adopt Dr. Chau's opined limitation that Plaintiff must avoid twisting. *Id.* The ALJ assigned "less weight" to Dr. Chau's check-box medical source statement. *Id.* Because Dr. Chau's opinion was contradicted by Dr. Platter and Dr. Stanley (Tr. 339-346, Tr. 443), the ALJ was required to provide specific and legitimate reasons for rejecting Dr. Chau's opinion. *Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Chau's medical source statement because it is inconsistent with his examination findings as reported in the narrative source statement. Tr. 568. A physician's opinion may be rejected if it is unsupported by the physician's treatment notes. *See Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's opinion as unsupported by physician's treatment notes). A medical opinion may be rejected by the ALJ if it contains inconsistencies. *Bray*, 554 F.3d at 1228. Dr. Chau's examination notes indicate results mostly within normal limits. *See* Tr. 878-80. Dr. Chau described Plaintiff as "in no distress" and noted that she "was ambulatory without assistive

device" and "able to be up on the toes and heels." Tr. 878-78. Dr. Chau assessed that Plaintiff could work full time at a full range of medium work, and that "[h]er only restriction would be to avoid excessive twisting activities at the waist." Tr. 880. Despite these benign examination findings, Dr. Chau's medical source statement imposed much greater restrictions, such as Plaintiff can never climb ladders or scaffolds, crouch, or crawl and occasionally climb stairs and ramps, stoop and kneel. Tr. 884. These restrictions are not supported by the examination notes. In fact, they contradict the examination note that Plaintiff's only restriction would be to avoid excessive twisting. Dr. Chau's medical source statement further opined that Plaintiff would be limited to occasional overhead reaching in both the right and left hands. Tr. 883. This is contradicted by the examination findings which indicate "[s]houlder abduction to 180 degrees bilaterally" and that Plaintiff "was with negative Tinel's testing of the wrists and elbows." Tr. 879. Dr. Chau's medical source statement is inconsistent with his treatment notes. These inconsistencies are a specific and legitimate reason to reject Dr. Chau's opinion.

Next, the ALJ afforded Dr. Chau's opinion less weight because it is inconsistent with Plaintiff's treatment record. Tr. 568. As discussed *supra* and *infra,* an ALJ may discredit treating physicians' opinions that are unsupported by the record as a whole or by objective medical findings. *Batson*, 359 F.3d at 1195. Here, the medical record does not support the extreme limitations that Dr. Chau

opined in his medical source statement. In fact, very little objective evidence

supports that Plaintiff has limitations on her ability to work. Plaintiff's pain

complaints are undercut by the objective medical evidence. Tr. 566 (citing Tr.

292; Tr. 439). For instance, Dr. Galloway examined Plaintiff and noted that she

described an increase in pain in December 2009, however, did not allege any

precipitating cause. Tr. 292. Dr. Galloway did not note any unusual test results,

described Plaintiff as being in "good general health[,]" and only prescribed

physical therapy to help Plaintiff manage her pain." *Id.* In another instance, an

examining physical therapist noted that Plaintiff self-reported that "she's had an

MRI, X-rays, and a CT scan and nothing shows up revealing the cause of the

pain." Tr. 439. Providers regularly found that Plaintiff appeared in no acute

distress or described Plaintiff as "well-appearing[.]" Tr. 566 (citing e.g., Tr. 357;

Tr. 368; Tr. 371; Tr. 373; Tr. 374; Tr. 383; Tr. 387; Tr. 388; Tr. 392; Tr. 399; Tr.

401; Tr. 402; Tr. 478; Tr. 483; Tr. 485; Tr. 490; Tr. 878; Tr. 893). While not

evidence that Plaintiff was not experiencing pain, it is reasonable for the ALJ to

note that providers often observed Plaintiff as not exhibiting external signs of pain

or discomfort given that Plaintiff's primary alleged limitation is pain. Such notes

from providers cast doubt on Plaintiff's allegations that her pain was debilitating.

Inconsistency with objective medical evidence provides a specific and legitimate

reason to discount Dr. Chau's opinion.

## C. Adverse Credibility Finding

Plaintiff faults the ALJ for failing to provide specific findings with clear and convincing reasons for discrediting her symptom claims.  ECF No. 14 at 14-20.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptom alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second,  "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834); *Thomas,* 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings

sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "not entirely consistent with the evidence[.]" Tr. 565.

### 1. Exaggeration

First, the ALJ found that Plaintiff's symptom testimony was not credible because "there is evidence in the record that Plaintiff exaggerates her symptoms." Tr. 565. In making a credibility determination, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying,

prior inconsistent statements … and other testimony by the claimant that appears less than candid." *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996). Dr. Dougherty noted that "[t]hough she was not clearly malingering, I would note some discrepancies between her past and present reports[.]" Tr. 533-34. Specifically, Dr. Dougherty went on to include "rule out symptom exaggeration" as one of Plaintiff's diagnoses. Tr. 535.

Plaintiff contends that the ALJ erred in finding that Plaintiff exaggerated her symptoms because he relied on Dr. Toews without properly evaluating that opinion. ECF No. 14 at 17. However, as analyzed *supra,* that ALJ appropriately evaluated Dr. Toews' opinion and the ALJ may rely on it. Next, Plaintiff cites evidence she contends undermines the ALJ's finding that "no treating provider ever indicated that [Plaintiff] exaggerates her symptoms, and the medical expert testified that her pain complaints are credible." ECF No. 14 at 17 (citing Tr. 52-54). It is the role of the ALJ to resolve conflicts and ambiguity in the evidence. *See Morgan*, 169 F.3d at 599-600; *see also Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson v. Perales*, 402 U.S. 389, 400 (1971). The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42

1  U.S.C. § 405(g).  This Court finds that the ALJ's decision is supported by

2  substantial evidence.

3       *2. Inconsistent Statements*

4       The ALJ also discounted Plaintiff's symptom testimony because she made

5  inconsistent statements to providers regarding her history and impairments.

6  Tr. 565.  An ALJ may consider inconsistencies in a claimant's testimony or

7  between the claimant's testimony and conduct in weighing the claimant's

8  credibility.  *Thomas*, 278 F.3d at 958-59.  Dr. Dougherty noted "the discrepancy

9  between her present levels of memory and intellectual function and her reports of

10  no significant memory difficulties, as below, and good academic functioning."

11  Tr. 533-34.  Dr. Toews noted that Plaintiff was a "poor historian, giving

12  information that is inconsistent with previous reported history, and is vague."

13  Tr. 855.  Of note, Plaintiff's allegedly disabling condition changed over time: in

14  October 2012, Plaintiff's chief complaints were pain in her lower back and hips

15  with notations of depression and anxiety; whereas, in October 2015, Plaintiff's

16  chief complaint was glaucoma but she did not include leg or back pain as an

17  impairment.  Tr. 566 (citing Tr. 528, Tr. 855).  These inconsistencies over time

18  cast doubt on the veracity of Plaintiff's complaints, and provide a clear and

19  convincing reason for the ALJ to discount Plaintiff's symptom testimony.

20

Plaintiff argues that the ALJ should have interpreted the evidence from Dr. Dougherty differently. ECF No. 14 at 17. Specifically, Plaintiff argues that the testimonial discrepancies Dr. Dougherty identified indicate more serious limitations because it shows that Plaintiff "does not fully understand the extent of her limitations, which is consistent with the finding of cognitive impairment." *Id.* As discussed *supra,* it is the ALJ's job to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. Simply because Plaintiff prefers a different interpretation of evidence does not indicate that the ALJ erred where the ALJ's opinion is supported by substantial evidence.

### 3. Daily Activities

The ALJ found that Plaintiff's "activities throughout the relevant period are inconsistent with her allegations of severely limiting symptoms." Tr. 566. It is reasonable for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in making the credibility determination. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Notwithstanding, it is well-established that a claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits. *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987). However, if a claimant is able to spend a substantial part of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit an

allegation of disabling excess pain. *Fair,* 885 F.2d at 603. "Even where

[Plaintiff's daily] activities suggest some difficulty functioning, they may be

grounds for discrediting the claimant's testimony to the extent that they contradict

claims of a totally debilitating impairment." *Molina*, 674 F.3d at 1113.

Here, the ALJ noted that Plaintiff is able to drive herself, go outside on her

own, and attend appointments on her own. Tr. 566 (citing Tr. 857). This is

inconsistent with Plaintiff's allegations that she is severely limited in her ability to

get out on her own. Furthermore, Plaintiff is able to care for herself by performing

all of her own personal care, cooking for herself, and cleaning around the house.

Tr. 566 (citing Tr. 857). Despite these notations, the ALJ did not provide more

support for the finding that Plaintiff's activities of daily living undercut her alleged

disabling symptoms than the prior order did. *Compare* Tr. 566 *with* Tr. 26. The

district court previously determined that the ALJ's reasoning was not supported by

substantial evidence and therefore could not be relied upon in discounting

Plaintiff's credibility. Tr. 711-12. Seeing as the ALJ did not significantly change

his approach to analyzing Plaintiff's daily living activities, this Court defers to the

prior court's finding that the ALJ's reasoning was not supported by substantial

evidence. However, such an error is harmless, as the ALJ supplied five other

specific, clear and convincing reasons to discount Plaintiff's symptom testimony.

*Molina,* 674 F.3d at 1111.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 29

### 4. Objective Medical Evidence

The ALJ also found that Plaintiff's symptom testimony was less than credible because it was inconsistent with the objective medical evidence. ECF No. 566. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins*, 261 F.3d at 857; *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair*, 885 F.2d at 601. However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *see also* S.S.R. 96-7p.[5] Minimal objective evidence is a factor which may be relied upon in discrediting a claimant's testimony, although it may not be the only factor. *See Burch*, 400 F.3d at 680. First, the ALJ noted that Plaintiff's "allegations of severely limiting eye symptoms are inconsistent with her treatment records." Tr. 566. In September 2015, Plaintiff's treating eye physician noted that Plaintiff

---

[5] S.S.R. 96-7p was superseded by S.S.R. 16-3p effective March 16, 2016. The new ruling also provides that the consistency of a claimant's statements with objective medical evidence and other evidence is a factor in evaluating a claimant's symptoms. S.S.R. 16-3p at *6. Nonetheless, S.S.R. 16-3p was not effective at the time of the ALJ's decision and therefore does not apply in this case.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 30

had "mild stage glaucoma[;]" and continued on to note that her eye condition would not interfere with full-time employment. Tr. 853-54. This is inconsistent with Plaintiff's allegation in October 2015 that glaucoma was her primary impairment preventing her from work. Tr. 855.

Plaintiff's pain complaints are also undercut by the objective medical evidence. Examining and treating physicians repeatedly noted that Plaintiff had relatively mild physical limitations. During an initial evaluation, physical therapist Leonard Galloway noted that Plaintiff's "gait is unremarkable." Tr. 566 (citing Tr. 292). Another physical therapist noted that Plaintiff had 5/5 strength in her lower extremities. Tr. 566 (citing Tr. 439). During a consultative examination, Dr. Chau noted that Plaintiff "demonstrated at least 4+/5 strength in her joints, negative straight leg raise testing, normal inspection of her knees and wrists, and only mildly painful to palpitation of the right SI joint." Tr. 566 (citing Tr. 879). Such benign findings in the objective medical evidence undercut Plaintiff's allegations of disabling pain and provide a clear and convincing reason for the ALJ to discount Plaintiff's symptom testimony.

The ALJ also noted that providers regularly found that Plaintiff appeared in no acute distress or described Plaintiff as "well-appearing[.]" Tr. 566 (citing e.g., Tr. 357 (Plaintiff "appears to be in no distress."); Tr. 358 (Plaintiff is "in no acute distress."); Tr. 368 ("middle-aged woman in no acute distress."); Tr. 371 ("middle-

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 31

aged woman in no acute distress."); Tr. 373 ("female in no acute distress."); Tr. 374 ("pain 0/10"); Tr. 383 ("Well-appearing, [no acute distress]"); Tr. 387 ("Well appearing female. [No acute distress]. Comfortable."); Tr. 388 ("woman in no acute distress."); Tr. 392 ("Well-appearing, [no acute distress]."); Tr. 399 ("Well-appearing [no acute distress]."); Tr. 401 ("Well-appearing, [no acute distress]."); Tr. 402 ("Well-appearing, [no acute distress]."); Tr. 478 ("female in no acute distress."); Tr. 483 (Plaintiff is in "[no acute distress]"); Tr. 485 (Plaintiff is in "[no acute distress]"); Tr. 490 ("female in no acute distress."); Tr. 878 ("female in no distress."); Tr. 893 (Plaintiff is in "[no acute distress]")). The ALJ reasonably concluded that the medical record did not support Plaintiff's symptom complaints.

### 5. Improvement with Treatment

Next, the ALJ discounted Plaintiff's symptom testimony because she improved with treatment. Tr. 566. Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits. *See, e.g., Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication); *Warre v. Comm'r of Social Sec. Admin.,* 439 F.3d 1001, 1006 (9th Cir. 2006). Here, Plaintiff reported improvement of her physical symptoms after physical therapy. Tr. 566 (citing Tr. 296) (After about a month of physical therapy treatment, "[Patient] reports that she has made good progress since starting PT

treatments. She says that her function has improved and her pain has decreased.").

Plaintiff reported that after about a month of physical therapy, she was able to

stand/walk for about 90 minutes, when she could only do so for about 30 minutes

before therapy. Tr. 296. Plaintiff also stopped taking pain medications as a result

of physical therapy. *Id.* Objectively, Plaintiff's physical therapist noted Plaintiff

"has made good improvement with decrease in pain and increase in function." *Id.*

Plaintiff's physical therapist also noted that "[Patient] has room for further

progress and would benefit from cont'd PT treatments, however, [Patient's]

insurance allows only 12 treatments per year." *Id.* If there is a good reason that

Plaintiff is unable to obtain treatment, the ALJ may not appropriately reject

Plaintiff's symptom testimony based on lack of treatment. *Smolen,* 80 F.3d at

1284 ("Where a claimant provides evidence of a good reason for not taking

medication for her symptoms, her symptom testimony cannot be rejected for not

doing so."). Despite this, the ALJ noted that Plaintiff "is independent with a home

exercise program." Tr. 296. Given that the physical therapist noted that Plaintiff is

independent with a home exercise program, and the significant improvement that

Plaintiff made even with incomplete treatment, the ALJ's finding that Plaintiff's

symptom testimony was not credible because of improvement with physical

therapy is supported by substantial evidence.

### 6. *Lack of Treatment*

The ALJ found that "[t]he notations in the claimant's treatment notes of normal psychiatric observations are inconsistent with the allegations of severely limiting mental health symptoms." Tr. 566. Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. §§ 416.929(c)(3)(iv), (v)(2016).[6] The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch*, 400 F.3d at 681. Plaintiff received very little mental health treatment. Plaintiff reported to Dr. Dougherty in October 2012 that she had never been involved in counseling. Tr. 529. From the record, it appears that she only had one mental health appointment between 2012 and 2015. Tr. 567 (citing Tr. 892-97). At that appointment, Plaintiff complained of serious mental health symptoms, such as depression, panic attacks, and difficulty trusting new people. Tr. 567 (citing Tr. 894). However, the ALJ discounted the symptoms alleged at this appointment because Plaintiff described needing documentation for her disability application.

---

[6] The regulation was revised effective March 26, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (January 18, 2017). Since the revision was not effective at the time of the ALJ's decision, it does not apply to this case.

*Id.*  The ALJ also noted that the timing of this appointment, less than a month before the hearing with the ALJ, suggests treatment was motivated by disability benefits rather than mental health treatment.  *See* Tr. 567.

Claimant alleges that she did not seek mental health treatment in part because she is distrustful of new people, a symptom of her mental health condition. ECF No. 14 at 20.  Where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility.  *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996).  However, when there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints.  *Molina*, 674 F.3d at 1113-1114.  Simply because a Plaintiff makes an assertion that lack of treatment is the result of her mental health condition does not require the ALJ to credit such an assertion if an alternative finding is supported by substantial evidence.  Here, the ALJ cited numerous reasons to reject Plaintiff's claim that she did not seek treatment because of her mental health condition. Plaintiff only sought treatment once, a month before the ALJ hearing, she mentioned at the appointment that she needed treatment as part of her social security disability application.  Tr. 567.  Moreover, Plaintiff's alleged mental

health symptoms did not stop her from seeking regular treatment for her other conditions, *see, e.g.,* Tr. 451-508, and Plaintiff did not seek follow-up treatment, despite recommendations to do so. Substantial evidence supports the ALJ's finding that Plaintiff's lack of mental health treatment was not a result of her mental health condition, and instead cast doubt on the sincerity of her alleged mental health condition.

## CONCLUSION

After review, the Court finds that the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**IT IS ORDERED:**

1. Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED.**

2. Defendant's motion for summary judgment (ECF No. 26) is **GRANTED.**

The District Court Executive is directed to file this Order, enter **JUDGMENT FOR THE DEFENDANT**, provide copies to counsel, and **CLOSE THE FILE.**

DATED August 21, 2017.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE